## Case No. 10,503a.

### OLMSTEAD v. The ACTIVE.

[5 Cranch (9 U. S.) 124–126.]

District Court, D. Pennsylvania. Jan. 4, 1803.

ADMIRALTY JURISDICTION—FEDERAL COURTS.

[The United States district court for the district of Pennsylvania has authority to enforce the decrees of the court of appeals in prize cases, established under the articles of confederation, against the proceeds of a prize condemned in that court, in whatever form such proceeds may appear as fully as it could against the original thing from which they were produced.]

[This was a libel by Gideon Olmstead and others against the executors of David Rittenhouse, to enforce a decree rendered December 15, 1778, of the court of appeals in prize cases of the United States, reversing a decree of the court of admiralty of Pennsylvania in relation to the disposition of the proceeds of the sloop Active, which had been condemned as a prize in the latter court.]

Gideon Olmstead, Artimus White, Aquilla Rumsdale, and David Clark, citizens and inhabitants of the state of Connecticut, were, during the Revolutionary war, captured by the British and carried to Jamaica, where they were put on board the sloop Active to assist as mariners in navigating the sloop to New York, then in possession of the British, with a cargo of supplies for the fleets and armies of Great Britain. During which voyage, about the 6th of September, 1778, they rose upon the master and crew of the sloop, confined them to the cabin, took command of the vessel and steered for Egg harbor, in the state of New Jersey. On the 8th of September, when in sight of that harbor, they were pursued, and forcibly taken possession of by Captain Thomas Houston, commander of the armed brig Convention, belonging to the state of Pennsylvania, and on the 15th of September, brought into the port of Philadelphia; when Houston libeled the vessel as prize to the Convention. A claim was interposed by Captain James Josiah, master of the American privateer Le Gerard, who claimed a share of the capture as having been in sight and by agreement cruising in concert with the Convention. A claim was also interposed by Olmstead and others for the whole vessel and cargo, as being their exclusive prize. The state court of admiralty, however, adjudged them only one-fourth part, and decreed the residue to be divided between the state and the owners of the privateer, and the officers and crews of the Convention and the Le Gerard. From this sentence Olmstead and others appealed to the court of commissioners of appeals in prize causes for the United States of America, where, on the 15th of December, 1778, the sentence of the state court was reversed, and it was ordered and adjudged that the vessel and cargo should be condemned as lawful prize for the use of the appellants, Olmstead and others, and that the marshal should sell the same, and pay the net proceeds to them or their agent or attorney. Upon receipt of a copy of this sentence, the court of admiralty made the following order:

"In the Court of Admiralty for the State of Pennsylvania. Thomas Houston, Esq., et al. appellees, ads. Gideon Olmstead, Artimus White, Aquilla Rumsdale, and David Clark, appellants, claimants of the sloop Active and her cargo.

"The court, taking into consideration the decree of the court of appeals in this cause, reversing the judgment or sentence of this court in the same cause, and further decreeing a condemnation of the sloop Active, her tackle, apparel, furniture and cargo, as prize, &c., and the process of this court should issue for the sale of the said sloop, her cargo, &c., and for the distribution of the moneys arising from the said sale after deducting costs to the claimants above named, their agent or attorney; after mature consideration are of opinion, that although the court of appeals have full authority to alter or set aside the decree of a judge of this court, yet that the finding of the jury in the cause does establish the facts in the cause without reexamination or appeal. And therefore the verdict of the jury still standing, and being in full force, this court cannot issue any process, or pro-

ceed in any matter whatsoever contradictory to the finding of the said jury. And therefore doth now decree, order and adjudge, that the marshal of this court be commanded to sell at public vendue at the highest price that can be gotten for the same, the said sloop or vessel called the Active, her tackle, apparel and furniture, and the goods, wares and merchandises laden and found on board her at the time of her capture, &c., and after deducting the costs and charges of the trial, condemnation and sale thereof, out of the moneys arising from the said sale, that he bring the residue thereof into court, there to remain ready to abide the further order of this court therein. George Ross. December 28th, 1778."

The finding of the jury, alluded to in the above order, was in these words:

"In the cause wherein Thomas Houston is libelant, and Olmstead and others first claimants, and James Josiah second claimant, we find as follows: One-fourth of the net proceeds of the sloop Active and her cargo to the first claimants; three-fourths of the net proceeds of said sloop and her cargo to the libelant and to the second claimants, as per agreement between them. Nov. 4th, 1778."

The warrant which Judge Ross directed to be issued to the marshal to make sale of the vessel and cargo, in pursuance of the above order, and which was accordingly issued on the 28th of December, 1778, after reciting the proceedings in this court, and in the court of appeals, proceeds as follows:

"This court, therefore, taking into consideration the premises, and being of opinion that consistent with the laws of this state it cannot carry into execution the whole of the said sentence of the honorable the court of appeals aforesaid; yet willing, so far as the said sentence appears legal, to carry it into effect, and to prevent, as far as possible, any injuries or losses which the parties to this cause, or either of them, may be liable to by the vessel or cargo continuing in their present situation, do therefore hereby command you forthwith to sell," &c., "and, after deducting the costs and charges, to bring the residue of the said moneys into court ready to abide the further order of this court." This warrant was made returnable at a court of admiralty, to be holden at the judge's chambers on the 7th of January, 1779.

Copies of the above order and warrant being produced, on the same 28th of December, 1778, before the court of appeals, it was moved, on the part of the appellants, Olmstead and others, that process might issue to the marshal of the admiralty of Pennsylvania, commanding him to execute the decree of the court of appeals; and after argument the case was postponed for further argument until Monday, 4th of January, 1779, at 5 o'clock p. m. On which day, at 8 o'clock a. m., the court of appeals being again convened at the pressing instance and request of the claimants Olmstead and others, it was moved and suggested by their advocates that, not-

withstanding the decree of the court of appeals, which had been transmitted to the court of admiralty, the judge of that court had appointed the hour of nine on that morning for the marshal to pay into court the money arising from the sale of the sloop Active and cargo, which suggestion was supported by the oath of the registrar of the admiralty; whereupon it was prayed that an injunction might issue from the court of appeals directed to the marshal of the court of admiralty, commanding him to keep the money in his hands until the further order of the court of appeals; which injunction was accordingly granted, reciting the sentence of the court of admiralty and its reversal, and the decree by the court of appeals; the refusal of the judge of the court of admiralty to cause that decree to be executed; and the motion to the court of appeals for a writ to the marshal commanding him to execute the same; the continuance of the motion to the 4th of January, 1779, at 5 o'clock p. m. and the appointment of the hour of 9 o'clock a. m. of the same day, by the special order of the judge of the court of admiralty, for the marshal to pay money into that court, whereby the effect of the writ prayed for, if the court should grant it, would be eluded. This injunction was served upon the marshal before he paid the money into the court of admiralty; but he disregarded it, and paid the money over to the judge, who gave a receipt for it. "Whereupon the court (of appeals) declared and ordered to be entered on record, that as the judge and marshal of the court of admiralty of the state of Pennsylvania had absolutely and respectively refused obedience to the decree and writ regularly made in and issued from this court, to which they and each of them were and was bound to pay obedience, this court being unwilling to enter upon any proceedings for contempt, lest consequences might ensue at this juncture dangerous to the public peace of the United States, will not proceed further in this affair, nor hear any appeal, until the authority of this court be so settled as to give full efficacy to their decrees and process. Ordered that the register do prepare a state of the proceedings had upon the decree of this court, in the case of the sloop Active, in order that the commissioners may lay the same before congress." Upon the writ issued by the judge commanding the marshal to sell the vessel and cargo, and bring the proceeds into court to abide its further order, the marshal, on the 4th of January, 1779, returned, that in obedience to that writ he had deposited in the court of admiralty £47,981. 2s. 5d., Pennsylvania currency, on account of the cargo of the prize sloop Active; but that the sloop remained yet unsold.

The money was loaned to the United States, and the loan-office certificates brought into court and deposited in the hands of the judge, who, on the 1st of May, 1779, delivered to David Rittenhouse, treasurer of the state of Pennsylvania, fifty of the certificates,

amounting to £11,496. 9s. 9d., "being the share or dividend of the state in right of the brig Convention in and out of the prize sloop Active, according to the verdict of the jury on the trial of the said sloop Active in the admiralty court of the state;" at the same time taking a bond of indemnity from Mr. Rittenhouse, by the name of "David Rittenhouse, of the city of Philadelphia, Gent.," the condition of which was that: "Whereas the said George Ross hath this day paid to the said David Rittenhouse, treasurer of the state of Pennsylvania, for the use of the said state, the sum." &c., now, "if he, the said David Rittenhouse, shall make repayment and restitution of the said sum of £11,496. 9s. 9d. unto the said George Ross, his executors or administrators, in case he, the said George Ross, shall hereafter by due course of law, be compelled to pay the same according to the decree of the court of appeals in the case of the said sloop Active; and if he, the said David Rittenhouse, shall and do in all things well and truly save harmless and indemnified at all times hereafter the said George Ross, his heirs, executors and administrators, and his and their lands and tenements, goods and chattels of and from all damages, actions and demands which may arise or happen, for or on account of his having paid the money aforesaid, then the above obligation to be void, or else to be and remain in full force and virtue." The certificates were afterwards funded in the name of David Rittenhouse, and among his papers was found a list of the old loan-office certificates, and of the new funded stock, at the foot of which was written, in the handwriting of Mr. Rittenhouse, the following memorandum: "Note.—The above certificate will be the property of the state of Pennsylvania, when the state releases me from the bond I gave in 1778, to indemnify George Ross, Esq., judge of the admiralty, for paying the fifty original certificates into the state treasury as the state's share of the prize." In the year 1801, the legislature of Pennsylvania passed an act [4 Dall. Laws Pa. 700] requiring the treasurer to call upon the executrixes of Mr. Rittenhouse for the certificates of stock, and to give them a bond of indemnity, but they refused to deliver them up, being advised that they would not be safe in so doing.

PETERS, District Judge. This is the long-depending case of the sloop Active and cargo. It comes before me by libel filed against the executors of the late Mr. Rittenhouse, who received from George Ross, Esq., then judge of the state court of admiralty, the sums mentioned in the libel, which were invested in the certificates of stock as stated therein. Mr. Rittenhouse, on receiving these certificates, which were proceeds of the sales of the said sloop and cargo, gave a bond of indemnity to Mr. Ross, which is now offered, when payment of these proceeds is made, to be delivered up. The suit is instituted for the purpose of carrying into effect a decree of the court of appeals established under the old confederation, a copy whereof appears among the exhibits. In the answer it is alleged that the moneys were received for the state of Pennsylvania. In the replication this is denied. In a memorandum made by Mr. Rittenhouse, at the foot of the account exhibited, it appears that he intended to pay over these proceeds to the state when indemnified. No such payment ever has been made, and the certificates and moneys are yet in the hands of the respondents. It appears to me that Mr. Rittenhouse considered himself, as I conceive he was, a stake-holder, liable to pay over the deposit to those lawfully entitled thereto. His executors conceive themselves in the same predicament, and have declined paying over the certificates and interest. No counsel have appeared, and requested to be heard on the part of the respondents, and I am left to judge from the libel, answer, replication, and exhibits, which contain the state of the facts. If I should be thought mistaken in the opinion I form on the subject, there is time and opportunity to appeal to a superior tribunal. I throw out of the case all circumstances not immediately within my present view of the duty I have to perform. I have nothing to do with the original question. That has been decided by the court of appeals; nor does it appear to me essential for me to determine with what intentions Mr. Rittenhouse received the certificates. The fact of the certificates and interest being now in the hands of the respondents is granted by them in their answer. It has been determined by the supreme court of the United States that this court has power to effectuate the decrees of the late court of appeals in prize causes, and this court has, on several occasions, practiced agreeably to that decision. There is no doubt in my mind (the authorities in the books being clear on this point) that the process and jurisdiction of this court will reach and extend over the proceeds of all ships, goods and articles taken as lawful prize, found within the district, and legally proceeded against therein. These proceeds are under the same legal disposition, and subject to the same responsibility, under whatever shape they may appear, as the original thing from which they were produced. It is conceded that the certificates and moneys in question are proceeds of the sloop and cargo in the libel mentioned. These were decreed to the libellants by the judgment of the late court of appeals. I am, therefore, of opinion, and accordingly decree, and finally adjudge and determine, that the certificates be transferred and delivered, and the interest moneys paid over by the respondents to the libellants, in execution of the judgment and decree of the court of appeals, as stated in the proceedings in this cause, with costs. I make it, however, a condition that the bond of indemnity be cancelled or delivered to the

respondents, on their compliance with this decree.

[NOTE. The respondents refused to obey this decree, and an application was made to the court for an attachment. This was refused. Whereupon the complainants moved in the supreme court for a mandamus against Judge Peters. Upon the hearing on the return a peremptory mandamus was awarded commanding him to issue the attachment. U. S. v. Peters, 5 Cranch (9 U. S.) 115.]